UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOUIS BINALEY,<br><br>             Plaintiff,<br><br>      vs.<br><br>AT&T UMBRELLA BENEFIT PLAN NO 1 and AT&T INC.,<br><br>             Defendants. | Case No.: 11-cv-04722-YGR<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR RECOVERY OF ATTORNEYS' FEES AND NON-TAXABLE COSTS UNDER ERISA** |

Pending before the Court is Plaintiff Louis M. Binaley's Motion for Recovery of Attorneys' Fees and Non-Taxable Costs Under ERISA ("Motion"). (Dkt. No. 42.) Plaintiff asserts he is entitled to recover fees and costs under Section 502(g)(1) of ERISA, 29 U.S.C. section 1132(g)(1). Defendants oppose the Motion. (Dkt. No. 47.)

Having carefully considered the papers submitted and the pleadings in this action, the arguments of counsel, and for the reasons set forth below, the Court hereby **DENIES** Plaintiff's Motion for Recovery of Attorneys' Fees and Non-Taxable Costs Under ERISA.

**I.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**[1]

Plaintiff worked for AT&T Inc. as a broadcast specialist. He applied for short-term disability benefits in November 2007, which was approved by Sedgwick Claims Management Services (AT&T's claims administrator) for 52 weeks—from November 28, 2007 to November 25, 2008.[2]

---

[1] The following background section is not intended to provide an exhaustive factual or procedural summary of this or any related action.

[2] The Court notes that the parties disagree on the medical condition that rendered Plaintiff unable to work. For the purposes of this Motion, however, the precise nature of the condition is not critical to the Court's analysis.

Plaintiff applied for, but was denied, long-term disability benefits. The instant action is the second ERISA case Plaintiff has filed against Defendants relating to this denial. The Court will discuss the relevant events chronologically.

### A. Binaley's First Action

Plaintiff's first lawsuit against Defendants, Case No. 10-cv-04439 ("First Action"), alleged three claims for: (1) benefits due under AT&T Umbrella Benefit Plan No. 1 (the "Plan"); (2) breach of fiduciary duty; and (3) statutory penalties. Specifically, Plaintiff alleged that Defendants refused to pay him disability benefits to which he was entitled under the terms of the Plan and that he had fulfilled every condition and performed every obligation required of him under the Plan. (Compl. [Dkt. No. 1] ¶¶ 6–7.) Plaintiff alleged Defendants breached their obligations to him by, among other things, "unreasonably and wrongfully failing to conduct and complete timely and [*sic*] proper investigation and review of plaintiff's claim for disability benefits, and by failing to conduct and completely timely and [*sic*] full and fair review of plaintiff's claim as required by ERISA." (*Id.* ¶ 8.)

The First Action was assigned to the Honorable Richard Seeborg. The parties stipulated to extend time for Defendants' response to the complaint (Dkt. No. 8), but no answer or motion to dismiss was ever filed. Instead, on December 15, 2010, the parties filed a Stipulation and Order for Voluntary Dismissal Without Prejudice. (Dkt. No. 9.) Pursuant to the Stipulation, the parties agreed to the following: (1) that the action would be dismissed in its entirety without prejudice; (2) the Plan agreed Plaintiff would be "permitted to file an administrative appeal of the denial of his claim for long term disability benefits" and that "the Plan shall perform a full and fair review of the appeal in accordance with the applicable provisions of [ERISA] and the applicable federal regulations promulgated thereunder"; (3) Plaintiff agreed to file his administrative appeal and submit all medical documentation from November 2008 to the then-present within 60 days of the date of the court's order, and the Plan would make its determination within 60 days of Plaintiff's submission of all of his medical documentation; and (4) the Plan agreed to toll any applicable statutes of limitation during the pendency of the appeal. (*Id.* ¶¶ 1–4.) The Stipulation further stated that "Plaintiff will not be barred from filing a timely civil action" after the applicable limitation period resumed upon final determination on the administrative appeal. (*Id.* ¶ 4.)

2

On December 17, 2010, Judge Seeborg approved the Stipulation in its entirety and without modification ("Order Approving Stipulation"). (Dkt. No. 10.) The First Action was thereafter closed.

### B.     Binaley's Administrative Appeal Pursuant to the Stipulation

Plaintiff pursued administrative review and reconsideration of Defendants' denial and termination of his benefits. According to Plaintiff, counsel repeatedly asked Defendants whether the records and information provided were sufficient and offered to provide whatever additional information was necessary. This included retaining an independent specialist to review his medical records, to conduct a physical examination, and to write two comprehensive reports for Defendants. In addition, Plaintiff retained an expert psychologist to perform formal cognitive testing and to produce a comprehensive written assessment. In sum, Plaintiff incurred over $11,000 in fees for these experts.

According to Defendants, the administrative appeal became a protracted process because Plaintiff delayed in presenting additional medical documentation and repeatedly submitted rebuttals to Sedgwick's findings, causing Sedgwick to refer Plaintiff's claim to six independent physician advisors. Plaintiff's counsel's repeated requests to toll the appeal time caused further delays.

In September 2011, Sedgwick determined that Plaintiff was disabled and that his condition would not reverse or improve over time. (Declaration of Julian M. Baum in Support of Plaintiff Louis M. Binaley's Motion for Recovery of Attorneys' Fees and Non-Taxable Costs Under ERISA ["Baum Decl." (Dkt. No. 45)], Ex. F at AR 000079.) The timeframe for his disability was determined to have been "11/26/08 through present." (*Id.* at AR 000080.)

On October 6, 2011, Sedgwick sent Plaintiff's counsel a letter stating that it had "determined to reverse the denial of benefits" based on the provision of the Plan regarding "Long Term Disability." (*Id.* at AR 000765.) Specifically, the medical information contained in Plaintiff's disability claim file "contained sufficient clinical findings to substantive a disabling condition. As such, disability benefits are approved beginning November 26, 2008." (*Id.*) The letter continued that under the Plan, long term disability ("LTD") benefits would be "reduced by certain other disability benefits such as Workers' Compensation, State Disability, Pension and Social Security Disability Income payments." (*Id.*) As to Plaintiff, Sedgwick understood that Plaintiff "ha[d] elected pension

benefits in a lump sum effective January 1, 2009. According to the provisions [of the Plan referenced in the letter,] the equivalent single life annuity [would be] used to offset/reduce LTD benefits. Therefore, the LTD benefit would be reduced by the single life annuity amount effective January 1, 2009." (*Id.* at AR 000766.)

### C. The Instant (Second) Action

On September 22, 2011, two weeks before the October 6th decision, Plaintiff filed the instant action alleging substantively identical claims to those asserted in the First Action (hereafter, "Instant Action" or "Second Action"). (Dkt. No. 1.) However, Plaintiff did not serve Defendants with the Summons and Complaint until October 12, 2011. (Dkt. No. 9.) Defendants thereafter filed an answer to the Complaint. (Dkt. No. 10.) Judge Seeborg related the First and Second Actions, and the Second Action was subsequently reassigned to him. (Dkt. Nos. 12–13.) On January 18, 2012, the Second Action was reassigned to the undersigned. (Dkt. No. 15.)

On December 18, 2012, Defendants filed a Motion for Summary Judgment or, in the Alternative, Motion for Summary Adjudication. (Dkt. No. 31.) Among other things, Defendants argued that the Plan explicitly provided that LTD benefits payable from the Plan would be reduced by the amount of "Integrated Benefits," which included Social Security Disability Income ("SSDI") benefits and "'[t]he monthly amount of service pensions, vested pensions or disability pensions which would be payable as a life annuity at termination of employment' if the pension is in 'pay status.'" (*Id.* at 20–21 (citing AR 1376–77) (alteration supplied in motion).) The Plan specifically provided "that the equivalent of monthly pension amounts payable as a single life annuity are considered Integrated Benefits and reduce LTD benefits." (Dkt. No. 31 at 21 (citing AR 1376–1337 [*sic*]).) As such, Defendants argued that because Plaintiff's pension funds were "in pay status," his LTD benefits were properly offset by the monthly single life annuity amount of $2,150.85 effective January 1, 2009, plus the $2,101.00 in monthly benefits received from SSDI benefits. (Dkt. No. 31 at 21–22.)

Moreover, Defendants identified the then-recent Ninth Circuit decision in *Day v. AT&T Disability Income Plan*, 698 F.3d 1091 (9th Cir. 2012), in which the court held that Sedgwick did not abuse its discretion in offsetting LTD benefits by the amount of plaintiff's pension benefits which he had rolled over into an IRA. (Dkt. No. 31 at 21.) Defendants argued that under *Day*, Sedgwick did

4

not abuse its discretion in offsetting Plaintiff's LTD benefits based on his pension benefits which had been paid out in a lump sum amount. (*Id.* at 21–22.)

On January 2, 2013, Plaintiff filed a Non-Opposition to Defendants' Motion for Summary Judgment. (Dkt. No. 38.) In the Non-Opposition, Plaintiff stated that "the main remaining issue in the [instant] lawsuit was the propriety of defendants' claimed offset." (*Id.* at 2.) Plaintiff noted that the Ninth Circuit had previously ruled in a similar case that ERISA plans may not apply an offset such as that applied to Plaintiff. (*Id.* (citing *Blankenship v. Liberty Life Assur. Co. of Boston*, 486 F.3d 620, 626–27 (9th Cir. 2007).) Plaintiff then conceded that the panel in *Day*, in examining *Defendants'* disability benefits plan, distinguished *Blankenship* and denied plaintiff's petition for rehearing and reconsideration *en banc*. Thus, "[a]fter due and careful consideration of the Ninth Circuit's ruling in *Day*, and after diligent consideration of the potential evidentiary basis to distinguish *Day*, plaintiff respectfully submit[ted] his Non-Opposition" to Defendants' Motion for Summary Judgment. (*Id.* at 3.)

On January 11, 2013, the Court issued an Order Granting Motion for Summary Judgment. (Dkt. No. 39.) Thereafter, on January 29, 2013, the Court entered Judgment in favor of Defendants and against Plaintiff. (Dkt. No. 41.) Plaintiff then filed the instant Motion for Recovery of Attorneys' Fees and Non-Taxable Costs.

## II. DISCUSSION

### A. Legal Standard for Recovery of Attorneys' Fees and Costs Under ERISA

Under 29 U.S.C. section 1132(g)(1), a "court in its discretion may allow a reasonable attorney's fee and costs of action to either party." "[A]s a general rule, the prevailing party on an ERISA claim is entitled to attorney's fees, 'unless special circumstances would render such an award unjust.'" *United Steelworkers of Am. v. Ret. Income Plan for Hourly-Rated Employees of Asarco, Inc.*, 512 F.3d 555, 564 (9th Cir. 2008) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 429 (1983)). For the purposes of attorney's fees under ERISA, a "prevailing party" is one who achieves a judicially-sanctioned, material change in the legal relationship of the parties. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604–05 (2001); *Langston v. N. Am. Asset Dev. Corp. Grp. Disability Plan*, No. C 08-02560 SI, 2010 WL 330085, at *1 (N.D. Cal. Jan. 20,

2010) (citing *Buckhannon*). "Th[e] judicially-sanctioned change in the parties' relationship need not be a judgment on the merits, and a prevailing plaintiff need not achieve directly through the judicial order itself the ultimate benefit sought." *Flom v. Holly Corp.*, 276 F. App'x 615, 616 (9th Cir. 2008) (citing *Carbonell v. I.N.S.*, 429 F.3d 894, 899 (9th Cir. 2005)). However, the party must show that the material alteration in the legal relationship between the parties "was 'stamped with some 'judicial imprimatur.''" *Langston*, 2010 WL 330085, at *1 (quoting *Carbonell*, 429 F.3d at 900); *see Flom*, 276 Fed. App'x at 616 (an order remanding a case to an ERISA administrator "can provide the judicial imprimatur necessary for a party to become a prevailing party").

In *Hardt v. Reliance Standard Life Ins. Co.,* 560 U.S. 242, 130 S. Ct. 2149 (2010), the Supreme Court held that fees and costs are awardable by a court "'in its discretion' . . . as long as the fee claimant has achieved 'some degree of success on the merits.'" *Id.* at 2152 (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983)). "A claimant does not satisfy [the 'some degree of success'] requirement by achieving 'trivial success on the merits' or a 'purely procedural victor[y],' but does satisfy it if the court can fairly call the outcome of the litigation some success on the merits without conducting a 'lengthy inquir[y] into the question whether a particular party's success was 'substantial' or occurred on a 'central issue.'" *Id.* at 2158 (quoting *Ruckelshaus*, 463 U.S. at 688 n.9) (first alteration supplied).

### B. Summary of Arguments Regarding Whether Plaintiff Achieved Some Degree of Success

Plaintiff argues he is entitled to attorneys' fees as the "prevailing party" because he succeeded in the First Action. Specifically, he emphasizes that the Order Approving Stipulation provided that "the Plan shall perform a full and fair review of the appeal in accordance with the applicable provisions of [ERISA] . . . and the applicable federal regulations promulgated thereunder." (Order Approving Stipulation ¶ 2.) The question is whether this voluntary, court-ordered remand is sufficient to constitute a judicially-sanctioned "material alteration" in the parties' legal relationship.

Plaintiff supports his claim with two arguments. First, he argues he was forced to file a formal lawsuit to obtain review of his claim. AT&T would not have voluntarily reviewed it without litigation. Second, the Order Approving Stipulation "was not merely advisory; it carried legal

6

consequences and gave [Plaintiff] potential remedies if AT&T failed to comply with it." (Reply at 4.) Specifically, the Order carried "substantial binding power effecting a 'material change in the legal relationship of the parties'" because, for example, it required Defendants to act within a specified time period. (*Id.* at 4–5.) As phrased by counsel at oral argument, Plaintiff argues the Order came with important conditions that had "real teeth."

Defendants counter with three primary arguments: first, Defendants obtained summary judgment in the Second Action and the Court entered judgment in favor of Defendants and against Plaintiff. As such, it prevailed on every issue in this action and Plaintiff achieved *no* success on the merits of any of his claims. Moreover, the Plan did not reverse its previous denial and concede Plaintiff's claim *because* he filed the Second Action. While Plaintiff filed the Instant Action on September 12, 2011, he did not serve Defendants until October 12, 2011. Plaintiff "clearly filed the Second Action in anticipation that the Claims Administrator would uphold the denial of benefits on appeal, but only served the Summons and Complaint when he realized that his benefits would be reduced to nonpay status." (Opposition at 6.) At the time Defendants received notice of the lawsuit (October 12), Defendants had already "determined to reverse the denial of benefits" and Sedgwick had already sent Plaintiff's counsel a letter on October 6 so informing them. (Baum Decl., Ex. F at AR 000765.)[3] In addition, Defendants argue Plaintiff's authorities are all distinguishable from this case because the remands to the claims administrators in those cases all resulted from courts making findings or determinations that the plan administrator had done something improper. (*See* Opposition at 7 ("Plaintiff has cited to no case in which a court has found that merely obtaining a voluntary agreement by the plan administrator to reconsider a claim for purposes of settling an action constitutes a material change in the legal relationship of the parties to justify an award of attorney's fees.").)

Second, Defendants argues that to the extent Plaintiff seeks to recover attorneys' fees and costs associated with the First Action, the request is untimely. Under Fed. R. Civ. P. 54, a motion for attorney's fees must be filed within 14 days after entry of judgment. While recognizing that there was

---

[3] Defendants' counsel confirmed at the hearing that neither Defendants nor Sedgwick knew of the Second Action prior to making the determination to reverse the denial and award LTD benefits.

no judgment in the First Action, Defendants argue that Rule 54 requires the fee motion be brought within 14 days after an event establishing finality in the action—here, the dismissal.[4]

Third, Plaintiff did not obtain judicially-sanctioned relief by virtue of (i) Defendants agreeing to allow Plaintiff to pursue an administrative appeal of the denial or (ii) the Plan reversing its previous denial and awarding him LTD benefits. Judge Seeborg *never determined* that Defendants or Sedgwick abused its discretion or acted improperly. Rather, the Plan chose to allow Plaintiff to file a late administrative appeal in exchange for dismissal of the First Action. The Order Approving Stipulation merely approved the terms agreed upon by the parties, and thus the resulting administrative appeal cannot be viewed as judicially-sanctioned or an acknowledgement of fault by the Court. At best, the "victory" in the First Action was only procedural and does not entitle Plaintiff to fees. *See Hardt*, 130 S. Ct. at 2158 (claimant does not achieve "some degree of success" by achieving "trivial success on the merits" or a "purely procedural victor[y]") (quoting *Ruckelshaus*, 463 U.S. at 688 n.9) (alteration supplied in *Hardt*).

**C. Analysis**

The Court finds Plaintiff's arguments unpersuasive with respect to the appropriateness of awarding attorneys' fees and costs in the instant case. There is no dispute that Plaintiff was not the prevailing party in this Second Action. He filed a non-opposition to Defendants' Motion for Summary Judgment and the Court ultimately entered judgment against him. To the extent that Plaintiff is arguing that he prevailed and/or achieved some degree of success because the Second Action led to his award of benefits, the Court is not persuaded. The evidence shows that Plaintiff did not serve Defendants with the Complaint until after the decision had been made to reverse the previous denial and award the LTD benefits. Counsel has confirmed to the Court that Defendants had no prior knowledge of the lawsuit. There is simply no evidence in the record indicating that

---

[4] As such, Defendants argue that any motion for fees based on the First Action must have been filed within 14 days after the Order Approving Stipulation. Alternatively, the motion should have been filed within 14 days after the final determination was made on the administrative appeal (October 6, 2011), when Sedgwick informed Plaintiff of the reversal of the denial of benefits. Defendants argue that without imposing the Rule 54 requirement of 14 days on a "final" event disposing of the case, Plaintiff would have no time limit to file his motion simply because the parties entered into a stipulation resolving the case.

Defendants were motivated to act based on knowledge of the Section Action. The Court thus finds that the Second Action did not cause any degree of success in achieving the LTD benefits.

Plaintiff, in effect, attempts to bootstrap his perceived success in the First Action to this action. The Court recognizes that an order remanding to the plan administrator *may* be sufficient success on the merits for attorneys' fee purposes, particularly where the plaintiff obtains the benefits sought. *Langston*, 2010 WL 330085, at *1 (citing *Flom,* 276 F. App'x at 616). Here, Plaintiff did ultimately receive the benefits he sought. However, the primary cases cited by Plaintiff to show he "succeeded" are distinguishable from the case at hand because Judge Seeborg's approval of the parties' stipulation is not similar to the "judicial imprimatur" present in those cases where remand was ordered. (Motion at 10 (citing cases).) For example, in *Hardt*, the Supreme Court recognized that a court order remanding an ERISA claim for further consideration may constitute "some success on the merits." 130 S. Ct. at 2158. The Court explained that even though plaintiff failed to obtain summary judgment on her claim, the district court found compelling evidence that she was disabled. *Id.* The district court declined to rule in plaintiff's favor—despite its inclination to do so—and instead ordered the claims administrator to act on plaintiff's application by adequately considering all the evidence within 30 days, *or else* judgment would issue in her favor. *Id.* at 2159. Only after the court-ordered review did the administrator reverse its decision and award plaintiff the benefits sought. *Id.* Unlike the case here, the district court *reviewed the record* and issued an order favorable to plaintiff.[5]

The Northern District of California cases cited by Plaintiff are equally inapposite.[6] Plaintiff is incorrect that this case is similar to *Langston* and *White*, which involved a district court "h[olding]

---

[5] This case is also distinguishable from *White v. Jacobs Eng'g Grp. Long Term Disability Benefit Plan*, 896 F.2d 344 (9th Cir. 1989). In that case, the Ninth Circuit stated that plaintiff was entitled to attorney's fees *after it had determined* that plan's notices of termination of benefits were inadequate and remanded the action to the district court with instructions to remand to the plan appeals board for adjudication on the merits. *Id.* at 352. Again, the court there made an actual finding, based on the record, that the plan had not followed proper procedures.

[6] *See Langston*, 2010 WL 330085, at *2 ("beyond doubt" that plaintiff achieved a material, judicially-sanctioned change in relationship where benefits were reinstated after court "determined that Hartford had failed to make adequate findings in support of its decision," identified numerous errors committed by Hartford, and ordered Hartford to reconsider claim using appropriate standards); *White v. Coblentz, Patch and Bass LLP Long Term Disability Ins. Plan*, No. C 10-1855 BZ, 2011 WL 5183854, at *1 (N.D. Cal. Oct. 31, 2011) (no dispute that plaintiff was "prevailing party" for fee purposes where

9

that defendants had conducted their initial appeals improperly." (Reply at 3.) Judge Seeborg made no finding whatsoever in approving the parties' Stipulation, nor was he even called upon by the parties to do so. He expressed no opinion on the content of the Stipulation, made no modifications thereto, nor did he add any conditions to the dismissal. Given that Judge Seeborg merely approved an agreed-upon stipulation, this Court cannot say that there was a material alteration in the legal relationship between the parties *because of* the Order. The Court further agrees with Defendants that, if anything, Judge Seeborg's Order was a procedural in nature and does not provide the "teeth" that Plaintiff contends it did.[7]

Having determined that Plaintiff did not achieve sufficient success in the First Action such that he may be deemed a "prevailing party," the Court need not address the parties' arguments regarding whether to invoke its discretion to award fees under test set forth in *Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir. 1980) nor need it calculate an appropriate fee award.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Recovery of Attorneys' Fees and Non-Taxable Costs Under ERISA is **DENIED**.

This Order terminates Dkt. No. 42.

**IT IS SO ORDERED.**

Dated: September 26, 2013

                          _____
                          **YVONNE GONZALEZ ROGERS**
                          **UNITED STATES DISTRICT COURT JUDGE**

---

Magistrate Judge Zimmerman issued Findings of Fact and Conclusions of Law, wherein he found plaintiff disabled and awarded her back benefits).

[7] Plaintiff relies on *Castell v. Metropolitan Life Ins. Co.*, No. 09-cv-01593-LHK, 2012 WL 986625 (N.D. Cal. Mar. 22, 2012) for the proposition that Judge Seeborg's Order Approving Stipulation came with a substantial binding effect because it subjected Defendants to the court's contempt power had it failed to adhere to the terms of the Order. A theoretical possibility of contempt—had Defendants failed to comply with the agreement—is insufficient to constitute a material change in the parties' relationship, as the Order itself did not require Defendants to do more than they were already agreeing to do by stipulation.